# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Tri-Marketing, Inc., a
Minnesota corporation,

Civil No. 09-13 (DWF/RLE)

          Plaintiff and
          Counter-Defendant,

v.

**MEMORANDUM**
**OPINION AND ORDER**

Mainstream Marketing Services, Inc.,
a Colorado corporation d/b/a Bolder Calls;
George V. Weese, an individual; and
Karyn F. Weese, an individual,

          Defendants and
          Counter-Plaintiffs.

_____

Mark G. Ohnstad, Esq., and Natalie R. Walz, Esq., Thomsen & Nybeck, P.A., counsel for Plaintiff and Counter-Defendant.

David H. Levitt, Esq., Gretchen A. Eck, Esq., and Jacob S. Woodard, Esq., Hinshaw & Culbertson, L.L.P., counsel for Defendants and Counter-Plaintiffs.
_____


## INTRODUCTION

This matter is before the Court on a Motion for Summary Judgment brought by Mainstream Marketing Services, Inc., a Colorado corporation, d/b/a/ Bolder Calls ("Bolder Calls"), George Weese, and Karyn Weese (collectively, "Defendants"). For the reasons set forth below, the Court grants Defendants' motion.

# BACKGROUND

Tri-Marketing, Inc. ("TRI"), a Minnesota corporation, is a telemarketing services company that generates, among other things, leads for the insurance industry. A lead is composed of information about a consumer who is interested in obtaining insurance. Since 2002, TRI has operated a website that provides information about its business and allows insurance companies or their agents to purchase its services. TRI updated its website in 2004 and 2007. On April 3, 2008, TRI sought copyright registration for both the 2004 and 2007 versions of its website. It has since received a Certificate of U.S. Copyright Registration for its 2007 website but has yet to receive one for its 2004 website.

Bolder Calls, a Colorado corporation, is one of TRI's competitors. George Weese is the President and Karyn Weese is the Vice President of Bolder Calls. Since 2003, Bolder Calls has also operated a website, and it updated its website in November 2005 and December 2007.

On February 18, 2008, TRI sent Defendants a cease-and-desist letter, demanding that Bolder Calls stop copying TRI's website. In December 2008, Ms. Weese, on behalf of Bolder Calls and a representative from TRI, made statements to a third-party accusing each other of copying the other company's website. On January 6, 2009, TRI commenced this action by filing a three-count complaint against Defendants, alleging claims for defamation and copyright infringement. Defendants now move for summary judgment.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**I.      Defamation**

The facts with respect to TRI's defamation claim are as follows. In December 2008, Kathy Flanagan of Allstate Insurance Company conducted telephone interviews with potential insurance lead vendors. On December 4, Ms. Flanagan conducted a

telephone interview with Ms. Weese of Bolder Calls.  In response to a question about competitors, Ms. Weese said that TRI was one of Bolder Calls' competitors and that TRI had copied Bolder Calls' website.  A few days later, Ms. Flanagan spoke with Patrick Ledger, one of TRI's owners.  In response to a question about competitors, Mr. Ledger said that Bolder Calls was one of TRI's competitors and that Bolder Calls had copied TRI's website.  Ms. Flanagan responded, "That's exactly what they said about you.[1]" (Doc. No. 78-1, Ex. 1 at ¶ 3.)

Under Minnesota law,[2]  the elements of defamation are:  (1) a false and defamatory statement about the plaintiff; (2) publication of that statement to a third party; and (3) harm to the plaintiff's reputation.  *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003).  Defamation that affects a plaintiff in his or her business, trade, or profession is defamation per se and is actionable without proof of actual damages. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980). Corporate plaintiffs stand on the same footing as individuals in defamation actions. *Advance Training Sys., Inc. v. Caswell Equip. Co.*, 352 N.W.2d 1, 10 (Minn. 1984).

---

[1]      Although Ms. Flanagan kept notes of her conversations with Ms. Weese and Mr. Ledger, the notes do not reflect anything particular about the comments; instead, Ms. Flanagan asserts that she remembers the comments based on their similarity.

[2]      For the purposes of this motion, the parties agree that Minnesota law applies to this claim.

Defendants[3] deny that Ms. Weese communicated a false statement to Ms. Flanagan.  However, for the purposes of this motion only, Defendants assert that TRI's defamation claim fails because TRI cannot establish the third element of its claim.  Namely, Defendants argue that TRI cannot prove that it has suffered specific harm to its reputation as a business that generates insurance leads.  Defendants rely on TRI's answer to an interrogatory to support their argument:

> 2.  Please provide an itemization and calculation of each and every item of damages allegedly sustained by the plaintiff as a result of any defamatory statement alleged in the Second Amended Complaint.
>
> **ANSWER**:   At this time, TRI is not aware of any actual damages that resulted from the aforesaid defamatory statement by Ms. Weese to Ms. Flanagan.  However, discovery is not complete at this time.

(Doc. No. 78-1, Ex. 2 at p. 2.)  Discovery closed on February 1, 2010, and prior to that time, Defendants assert that TRI did not produce any additional evidence showing how its reputation was harmed by Ms. Weese's statement.

TRI responds that there is a genuine issue of material fact with respect to whether Ms. Weese's statement harmed TRI's reputation.  According to TRI, "[b]ecause TRI's Web site is a primary method of attracting business, a statement that the content of TRI's Web site was not its own hurts TRI's reputation."  (Doc. No. 81 at 10 (citing to Supplement Affidavit of Mr. Ledger).)  In addition, TRI asserts that Ms. Weese's

---

[3]     Although the Second Amended Complaint is not clear on this point, the parties appear to agree that the defamation claim is asserted against all of the Defendants.

statement "naturally implies that TRI's Web site was not based on original, independent thought. This, therefore, constitutes a statement regarding the way TRI, allegedly, conducts its business." (*Id*.)

The Court agrees with Defendants. There is nothing in the record to suggest that the copying of one's website is central to or directly affects TRI's business. As Chief Magistrate Judge Raymond L. Erickson explained in his order denying TRI's Motion to Amend to Seek Punitive Damages, "TRI offers nothing more than the mere fact of the statement, along with TRI's conclusory construction, as evidence that the statement is defamatory to its reputation." (Doc. No. 59 at 22.) TRI has not shown *how* a statement that TRI copied Bolder Calls' website statement has harmed TRI's reputation with respect to its insurance leads business. *See Moss v. Advance Circuits, Inc.*, 981 F. Supp. 1239, 1251 (D. Minn. 1997) (explaining that, in order for a statement to constitute slander per se as to a person's business, it must be "particularly harmful to plaintiff in her business, and general disparagement is not enough."). Without more, TRI's defamation claim fails, and the Court grants Defendants' motion with respect to this claim.

## II.    Copyright Infringement

There is no dispute with respect to the works at issue for the copyright infringement claim: TRI's 2004 and 2007 websites, and Bolder Calls' 2005 and 2007 websites. In the Second Amended Complaint, TRI alleges a claim for copyright infringement against Bolder Calls and a claim for vicarious liability against Mr. and Ms. Weese based on the infringement claim. To prevail on a copyright infringement claim, a plaintiff must prove ownership of a valid copyright and copying of original

elements of the work.  *Mulcahy v. Cheetah Learning, LLC*, 386 F.3d 849, 852 (8th Cir. 2004).  Although Defendants dispute the validity of the copyrights TRI claims to have for its 2004 and 2007 websites, Defendants focus their summary judgment motion only on the "copying of original elements of the work" prong of the copyright infringement analysis.

A plaintiff may prevail on a claim of infringement not only with direct evidence of copying but also by proving that a defendant had access to the copyrighted works and that there is a substantial similarity between the copyrighted works and the defendant's works.  *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987).  There is no evidence of direct copying in this case.  Moreover, while Defendants deny having access to TRI's website, for the purposes of their summary judgment motion, they focus only on whether there is a substantial similarity between TRI's and Bolder Calls' websites.  The Eighth Circuit has adopted a two-step test to determine whether works are substantially similar.  First, a court analyzes the similarity of ideas extrinsically, focusing on objective similarities of the works.  *Id.*  "Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression."  *Id*.

Defendants' motion focuses on the second, or intrinsic, test.  Defendants assert that they are entitled to summary judgment because there is no similarity of expression between the two websites.  Defendants contend that TRI confuses the similarity of ideas and subject matter with the expression of them.  TRI responds that Defendants improperly focus on the differences, as opposed to the similarities, of the websites.  TRI

further asserts that, at a minimum, genuine issues of material fact exist with respect to whether the websites are substantially similar works.

The Court agrees with Defendants.  Both websites involve the insurance leads business and therefore necessarily contain similar general ideas and terms relating to the delivery of leads, products and services offered, and pricing.  But, it is axiomatic that copyright law protects only the expression of ideas, not the ideas themselves.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991); *see also* 17 U.S.C. § 102(b).  Thus, ideas with respect to looking for leads, offering guarantees, pricing information, and about a company's experience are not, by themselves, protectable. Instead, only the expression of those ideas is protectable.

Viewing the evidence in the light most favorable to TRI, the Court concludes that there is no genuine issue of material fact with respect to the absence of substantial similarity between the protectable elements of TRI's website and of Bolder Calls' website.  Specifically, recognizing the minimal level of creativity necessary to warrant copyright protection, the Court finds that reasonable minds could not differ in concluding that the means of expression, organization, and format of the websites are dissimilar. (*See, e.g.,* Doc. No. 60 at 4 (comparing "At T.R.I. we have done every type of telemarketing imaginable for the insurance industry.  If you're an agent looking for quality leads, you've just found your new lead generation service," with "Bolder Calls offers years of experience performing successful lead generation campaigns for the insurance industry.  If you are an agent looking for qualified insurance leads, you've come to the right place!" and "Any lead order will be spread out throughout the month

i.e. 80 leads per month, you will receive roughly 20/week." with "You sign up for a certain number of leads per week, which we use as a 'quota.' As your quota is filled during each week, we will fax or email your leads daily.").) The Court also finds that any remaining similarities between the websites are either noncopyrightable ideas, scènes à faire, standard industry or website language, or of an insubstantial nature. *See, e.g.*, *id.* at 4-6 ("Auto/Home Leads," "Agent Recruiting," "Products and Services," "Contracts and Leads Delivery").) Given this, TRI's copyright infringement claim fails, and the Court grants Defendants' motion with respect to this claim and the vicarious liability claim because it is based on the copyright claim.[4]

---

[4]     In the alternative, Defendants assert that they are entitled to summary judgment on the issue of damages because TRI has produced no evidence of any causal connection or nexus between TRI's claimed damages and Defendants' conduct. Defendants contend that TRI's damages analysis is based solely on the fact that TRI lost customers near the time that Bolder Calls' website went online. TRI responds that it has established a nexus between Defendants' infringement and Boulder Calls' profits and that Defendants now have the burden to prove otherwise. To support this argument, TRI relies on the Affidavit of Robert Previte, submitted in conjunction with its opposition memorandum. Mr. Previte avers that he switched some of his business from TRI to Bolder Calls because of the similarity between the two company's websites. TRI also asserts that it also has two additional potential trial witnesses to support its damages theories and further witnesses may become known after the parties exchange customer lists.

    While the Court need not reach this issue, it notes that it agrees with Defendants that TRI's evidence is too general to establish the required nexus. A prevailing plaintiff "is entitled to recover the actual damages suffered by him or her *as a result of* the infringement" and "any profits of the infringer that *are attributable to* the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (emphasis added). As is often true when any competitor enters the marketplace, Bolder Calls' presence in the marketplace may have negatively impacted TRI's profits in some manner. But TRI has produced no evidence of a casual link directly between Bolder Calls' alleged infringement and TRI's damages. In other words, TRI has not established

(Footnote Continued on Next Page)

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

1.      Defendants' Motion for Summary Judgment (Doc. No. [75]) is **GRANTED**.

2.      The Amended Complaint (Doc. No. [15]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 12, 2010                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge

---

(Footnote Continued From Previous Page)

that but for Bolder Calls' alleged infringement of TRI's website, TRI would not have suffered its losses.  Without more, TRI's damages claim fails.